**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Laura TROMBLEY,**
**Defendant-Appellant.**

**No. 83–1492.**

United States Court of Appeals,
Sixth Circuit.

Argued March 15, 1984.

Decided April 25, 1984.

Gershwin A. Drain, Kenneth R. Sasse, argued, Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Michael J. Lavoie, Art Noel, argued, Detroit, Mich., for plaintiff-appellee.

Before KEITH and KRUPANSKY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

The appellant, Laura Trombley, was indicted in a multiple count indictment in which she and four other individuals were charged with violations of 18 U.S.C. § 2, § 2312 and § 2313.[1] A jury trial was held, and appellant was convicted on Count Three of transporting a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. §§ 2312 and 2. She was convicted on Count Four of receiving a stolen motor vehicle which was part of and constituted interstate commerce in violation of 18 U.S.C. § 2313. Appellant was sentenced to three years probation with a fine of $1,000 to be paid within two years. This appeal followed. For the reasons set forth below, we affirm.

In March of 1982, the FBI conducted an undercover project in Detroit known as Project Derings. The goal of the project was to have undercover agents introduced to individuals who were involved in large scale commercial auto theft rings. To facilitate the introduction, undercover FBI agents represented themselves as corrupt employees of the Michigan Secretary of State's office who were selling fraudulent titles, registrations, and license plates to automobile thieves for $1,000.

Joseph Finnegan, an undercover agent, adopted the identity of Joe Booker and posed as a corrupt official of the Secretary's Office. On June 16, 1982, Agent Finnegan prepared a Michigan vehicle title, registration, and a license plate for Laura Irene Trombley, who resided at 23072 North Brookside Drive, Dearborn Heights, Michigan. Finnegan delivered these documents to Gwen Clemens, who conveyed them to the appellant through Eric Fair (Eric Fair was also indicted in this case).

Approximately six months later, on December 9, 1982, Agent Finnegan recorded a telephone conversation with Ms. Trombley. The overall thrust of the conversation was her complaint that the paperwork for the 1981 Seville, which she had obtained from Eric Fair, did not adequately legitimize the stolen automobile. During this conversation, she made several admissions. The appellant admitted that she had acquired a 1981 Cadillac Seville for $3,700, instead of a Lincoln Continental, in approximately March of 1982. She also admitted that she took out a loan for $3,000 from General Finance, using the car as collateral. The loan was used to take a trip to Texas to visit her son who was in the hospital. In driving to Texas, appellant indicated that she had travelled across sixteen state lines, and in doing so, was concerned about the result if she had been stopped by police. She further admitted that she knew the car was "hot". In response to the undercover agent's question as to why she decided to acquire the car knowing it was "hot", the appellant stated: "Well, because my son owed me some money and uh, my son knew Eric and Sam." The appellant acknowledged that she knew that the vehicle identification number had been altered on the automobile. Finally, the appellant admitted that she had driven to Texas accompa-

---

**1.** Title 18 U.S.C. § 2 provides:
  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
  (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
Title 18 U.S.C. § 2312 provides:
  Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, know-

ing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
Title 18 U.S.C. § 2313 provides:
  Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

nied by her mother. Throughout the conversation, the defendant persisted in efforts to acquire additional paperwork for the automobile which she hoped would make it "legal".

Eric Fair testified that he met the appellant through one of her sons and attempted to obtain a Lincoln Continental as requested by the appellant for $2,500. He was unable to obtain a Lincoln, but did acquire a 1981 Seville. He took the Seville to the house of one of appellant's sons. Trombley inspected the car, which had a broken window and a damaged ignition. Ms. Trombley gave Fair money to repair these items, and the car was taken to her garage.

Fair also testified that the appellant contacted him some time later and told him the plates had expired and she could not get them renewed. Trombley told Fair that she had to get the plates renewed so that she could visit her son in Texas. Fair gave the appellant's phone number to the undercover agent (Agent Finnegan) so he could contact her about the problem with the paperwork.

The evidence showed that the 1981 Cadillac had been stolen from Lorraine Harris in late February 1982. According to Ms. Harris the automobile had less than three thousand miles when stolen and was valued at $14,500. In December 1982 there were approximately eight thousand miles on the car's odometer.

The appellant admitted that she travelled to Texas in the summer of 1982 but that she went in a 1968 Cadillac instead of the 1981 Cadillac Seville. She stated that she took the older car because it had more space for luggage and a roomier backseat for her mother. When confronted with her tape-recorded admission to undercover agent Finnegan that she had taken the Seville to Texas, she said that it was a false statement. The appellant said she told the undercover agent she had taken the car across state lines in an effort to try and scare him into getting proper paperwork.

The sole question presented for review is whether appellant's pre-arrest, out-of-court admission to an undercover government agent that she transported a stolen motor vehicle between Michigan and Texas was sufficiently corroborated to establish the jurisdictional element of interstate transportation.

The appellant contends that the government relied entirely on the tape recorded admissions made during the conversation with the undercover FBI agent to prove that the stolen 1981 Cadillac Seville travelled in interstate commerce. The appellant claims that because the prosecution failed to provide any independent corroboration of the admission, the conviction should be reversed. The government submits that the appellant's admission that the stolen 1981 Cadillac Seville was transported to Texas was corroborated elsewhere in the government's case. Furthermore, even if corroboration was lacking, the defendant's entire statement to the undercover agent was amply corroborated as a whole, and sufficient to prove interstate transportation.

The Supreme Court has recognized that the government must introduce independent evidence to establish the trustworthiness of a defendant's statement. *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954). The Supreme Court further held in *Smith v. United States*, 348 U.S. 147, 155, 75 S.Ct. 194, 198, 99 L.Ed. 192 (1954) that the corroboration rule was applicable not only to confessions but also to mere admissions where the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element of the case.

It is generally recognized that corroboration in federal court does not entail independent proof of each element of the offense charged. The purpose of corroboration is to ensure the reliability of the confession or admission of the accused. *United States v. Bukowski*, 435 F.2d 1094, 1106 (7th Cir.1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). Thus, the requirement is only that there be extrinsic evidence corroborating the admis-

sion as a whole which, taken together with the admission, is sufficient to support a finding of guilt beyond a reasonable doubt. *United States v. Gravitt*, 484 F.2d 375, 381 (5th Cir.), *cert. denied*, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1973). If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible, and some elements of the offense may be proven entirely on the basis of a corroborated confession. *United States v. White*, 493 F.2d 3 (5th Cir.), *cert. denied*, 419 U.S. 901, 95 S.Ct. 186, 42 L.Ed.2d 147 (1974).

In *United States v. Wilson*, 436 F.2d 122 (3d Cir.), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971), the court examined a corroboration issue which is virtually on all fours with the present case. In *Wilson*, the defendant made an admission to a Philadelphia detective that he drove a Dodge Charger from Philadelphia to California. In other parts of the defendant's admission he stated where he had purchased the car and that he was stopped by a policeman in California. These other parts of defendant's admission were corroborated. The court stated that since two parts of the defendant's admission were corroborated by other evidence, this established the trustworthiness of the entire admission and the prosecutor could prove the element of interstate transportation solely by the defendant's admission.

■ In the present case, the government could prove the interstate transportation element entirely by the appellant's statements to Agent Finnegan, provided there were other parts of the defendant's statement which were corroborated.

The appellant talked with the undercover agent because she had been told by Eric Fair that he was the one who provided the paperwork in the past for the stolen car. Since appellant was unable to obtain renewed license plates for the car, she contacted the undercover agent to obtain the necessary paperwork from him. During this conversation appellant made numerous admissions relative to her acquisition of the stolen car, her use of the stolen car, her knowledge that the car was stolen, and her transportation of the car from Michigan to Texas and back. Specifically, she admitted the following: that she received the car from Eric Fair; that she had two different sets of papers for the car; that the first set was entirely wrong; that she paid $3,700 in full for the car; that she had initially ordered a Mark VI for $2,500, but had to pay an additional $1,200 for the Cadillac Seville because it was "too hard to take"; that she took the car across sixteen state lines to visit her injured son in Texas; that she knew the car was stolen; that she bought the car knowing it was "hot" because her son owed her some money and this would "cross the bill off"; that her mother went to Texas with her; and that she knew the vehicle identification number was altered by changing a five to an eight. In the second conversation, held minutes after the first one, the appellant continued to complain about the adequacy of the paperwork for the car and persisted in her attempts to obtain paperwork which would "legitimize" the stolen car. At one point appellant again admitted that she knew the car was stolen, and said "they tell me this is all legal when they give you this paperwork".

The appellant's preceding statements were corroborated by other evidence presented in this case. Eric Fair testified that he delivered the stolen car to Trombley's house, that the vehicle identification number had been changed, that he delivered the paperwork for the stolen car to the appellant, and that she told him she was going to see her sick son in Texas. The appellant's admission that the vehicle identification number was altered from five to eight was also corroborated. Special Agent Charles Poplinger of the FBI testified as an expert witness that the defendant's title contained a vehicle identification number which had been altered by changing a five to an eight. Additionally, all defense witnesses testified that Trombley travelled to Texas in the summer of 1982 to visit her sick son.

The appellant's admission that she drove across state lines is also corroborated.

Lorraine Harris, the owner of the car, testified that the car was stolen in February of 1982 and that there were less than three thousand miles on the car at the time of the theft. The appellant testified that there were approximately eight thousand miles on the car when she talked to the undercover agent in December of 1982. The only reasonable explanation for the additional five thousand miles was the appellant's trip to Texas. The appellant testified that she did not drive the car prior to obtaining insurance on July 14, 1982. Approximately one week later she left for Texas. On October 22, 1982, appellant's husband attempted to get new plates for the car, but was unable to do so. After this date the car was kept in the appellant's garage. Therefore, the only reasonable explanation for the additional mileage was the trip to Texas. These facts corroborate the appellant's admission that she drove to Texas.

Based on these facts, corroboration exists for both the whole and the part of the appellant's admission, establishing the jurisdictional element of interstate transportation.

Accordingly, we affirm the judgment of the Honorable Thomas P. Thornton of the United States District Court for the Eastern District of Michigan.