999 F.2d 540
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert T. CALHOUN, Defendant-Appellant.
 No. 92-2011.
 United States Court of Appeals, Sixth Circuit.
 July 26, 1993.
 
 Before KENNEDY and MARTIN, Circuit Judges, and FORESTER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant appeals his convictions for conspiracy to distribute cocaine base, a.k.a. crack cocaine, 21 U.S.C. § 841(a)(1), possession with intent to distribute crack cocaine, 21 U.S.C. § 846, and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1). He challenges the sufficiency of the evidence, the finding that his confessions were voluntary and asserts that counsel was ineffective. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 
 2
 In December, 1991, Federal Alcohol, Tobacco and Firearms ("ATF") agents John Griffith and Jeremy Langley went to the residence of David Addison to arrest him for firearms violations. The agents knocked on the door and announced their arrival: "federal agents, police, open the door." Immediately after this announcement, defendant Robert Calhoun jumped out of a house window and ran from the agents. Thinking that Calhoun was Addison, the agents chased him and agent Griffith tackled Calhoun in an open field. Griffith found a packet of four individual packages of crack cocaine on the ground directly underneath Calhoun. Griffith arrested Calhoun for possession of crack cocaine and read him his Miranda rights. Calhoun told Griffith that he wanted to cooperate and proceeded to tell Griffith that: 1) Addison was still in the house and could not run because he had a cast on his leg; 2) Addison possessed a .38 caliber pistol that he had obtained from a "crack cocaine head" in exchange for some crack cocaine; 3) Addison possessed crack cocaine that he probably had hidden in his cast; and 4) that Calhoun had been selling crack cocaine for Addison for about two months.
 
 
 3
 With Calhoun in custody, Griffith and Langley returned to Addison's house. Together with ATF agents Sorrano and Krappman, Griffith and Langley forcibly entered Addison's house. The agents found Addison with his leg in a cast, .38 caliber ammunition and a small amount of marijuana in his pocket, and a loaded .38 caliber revolver with an obliterated serial number under a mattress in a bedroom. No crack cocaine was found in Addison's cast. No other drugs or drug paraphernalia were found in the house.
 
 
 4
 While in an ATF vehicle, the agents took a written statement from Calhoun. Before taking the statement, agents Sorrano and Krappman again advised Calhoun of his Miranda rights. This was done by reading each of his rights out loud from a printed form and having Calhoun initial each of the rights if he understood them. Calhoun then confessed to Sorrano and Krappman. Krappman paraphrased Calhoun's statement as follows:
 
 
 5
 I, Robert Calhoun state that I reside at 15077 Winthrop. I have been selling crack cocaine with David Addison for about two months. On a day to day basis David Addison and I sell about one half ounce of crack cocaine a day. The .38 revolver found inside the house belongs to Addison and he uses the gun for protection of his dope business and himself. David Addison received the gun about three weeks ago from a crack cocaine head in exchange for two $20 rocks. I have seen Addison carry the gun. He usually carries it in his waistband. The rocks sold out of Addison's house on Forrer are usually twenty dollar rocks.
 
 
 6
 Krappman read the statement back to Calhoun who agreed with it and signed it. Sorrano then discovered a loaded .38 caliber pistol, with the serial number obliterated, in Calhoun's jacket pocket that Griffith had missed in an earlier pat down.
 
 
 7
 At ATF headquarters, after the gun on Calhoun had been found, agent Griffith again advised Calhoun of his Miranda rights. Defendant signed another form indicating that he understood his rights and wished to waive them. Calhoun again confessed. Griffith paraphrased what defendant had said and reduced the statement to writing:
 
 
 8
 I, Robert T. Calhoun state that I reside at 15077 Winthrop, Detroit, Michigan, 48227. Early today I was arrested by ATF. Following my arrest I was informed of my rights and I agreed to answer questions and then made a statement in writing. I now wish to make an additional statement because I did not tell the complete truth in my first statement. I have been read my rights again by Special Agent Griffith and I now wish to answer questions and make the following statement without having a lawyer present. Like I said in my first statement, I have been selling crack cocaine every day for the past two months. While selling crack cocaine I carry a .38 revolver which I use to protect my drug business. I have not shot anyone but I would a crack cocaine head but not any of you all. I got the gun from a lady. Actually David Addison purchased three guns. Two six shot 38's and a five shot from this lady in exchange for two $20 rocks apiece.
 
 
 9
 The statement was read back to Calhoun who signed it. Griffith acknowledged that the words in the written statement were not entirely Calhoun's, that Calhoun didn't speak in the manner reflected in the statement, but denied embellishing anything.
 
 
 10
 The Grand Jury handed down a three-count indictment charging defendant with conspiracy to distribute crack cocaine (Count I), possession with the intent to distribute crack cocaine (Count II), and carrying a firearm in relation to a drug trafficking crime (Count III). Defendant made a motion to suppress his statements and the physical evidence, which was denied. After a three-day trial, the jury convicted defendant of all three counts. The parties stipulated to a quantity of fifty grams of crack cocaine for sentencing purposes. The Sentencing Guidelines range was 121-151 months, from which the court departed downward one month. Defendant was sentenced to 120 months for Counts I and II and five years for Count III, the terms to run consecutively. This timely appeal followed.
 
 II. Sufficiency of the Evidence
 
 11
 Defendant first argues that there was insufficient evidence to support his convictions because the convictions were based on his uncorroborated post-arrest confessions. He asserts error in their admission. For the same reason, defendant asserts that the District Court erred in denying his motion for judgment of acquittal. Evidence is sufficient to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This Court must draw all reasonable inferences in the government's favor. United States v. Allen, 954 F.2d 1160, 1169 (6th Cir.1992). When reviewing the denial of a motion for acquittal, we employ an identical standard. United States v. Busacca, 936 F.2d 232, 239 (6th Cir.) (quoting the Jackson standard), cert. denied, 112 S.Ct. 595 (1991).
 
 A. Counts II and III
 
 12
 The admissions or confessions of a criminal defendant that are obtained subsequent to the completion of a criminal act must be corroborated by some independent evidence to insure the reliability of the statements. Opper v. United States, 348 U.S. 84, 90 (1954). "[P]roof that the criminal act took place--the so-called 'corpus delicti'--will satisfy the corroboration requirement. In cases where there is no clear proof of the corpus delecti, courts have required independent evidence corroborating defendant's statements." United States v. Marshall, 863 F.2d 1285, 1287 (6th Cir.1988) (citations omitted). We agree with the government that with respect to Count II (possession with intent to distribute crack cocaine) and Count III (carrying a firearm during a drug trafficking crime), there was sufficient evidence to support defendant's convictions apart from his confession. The possession of the four packets corroborates his confession of possession with intent to distribute, and the possession of the gun while possessing drugs corroborates the gun count conviction. That evidence is clearly sufficient to corroborate defendant's confessions and the confessions were properly admitted with reference to Counts II and III.[1]
 
 B. Count I
 
 13
 Defendant's conspiracy conviction is a closer question. The government concedes that this conviction stands and falls with Calhoun's confessions. There is no evidence outside of the confessions to prove the existence of any agreement with Addison to distribute cocaine. To establish the drug conspiracy charged here, an agreement between two or more persons to distribute drugs and proof that defendant entered into the agreement must be shown. United States v. Bourjaily, 781 F.2d 539 (6th Cir.1986). There is no independent evidence of an agreement between Calhoun and any other person.
 
 
 14
 The purpose of the corroboration requirement is to ensure the reliability of the confession. United States v. Trombley, 733 F.2d 35, 37 (6th Cir.1984) (citing United States v. Bukowski, 435 F.2d 1094, 1106 (7th Cir.1970), cert. denied, 401 U.S. 911 (1971)). The courts have recognized that confessions may be unreliable because of official coercion or inducement. In the present case, the District Court was concerned that defendant's statements might have been induced by the agents' alleged assurances to Calhoun that they were only after Addison and that his statements wouldn't be used against him.
 
 
 15
 Corroboration does not require independent proof of every element of the charged offense. Id. The United States Supreme Court has stated that the purpose of the corroboration requirement is fulfilled where "the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." Opper, 348 U.S. at 93 (emphasis supplied). Similarly, the law in this Circuit requires that the essential facts in an admission or a confession be corroborated. "An out-of-court admission is adequately corroborated if the corroborating evidence 'supports the essential facts admitted sufficiently to justify a jury inference of their truth.' " United States v. Pennell, 737 F.2d 521, 537 (6th Cir.1984) (quoting United States v. O'Connell, 703 F.2d 645, 648 (1st Cir.1983)), cert. denied, 469 U.S. 1158 (1985). See also, Marshall, 863 F.2d at 1287 ("statement ... discussing an essential element of the crime, required corroboration to establish trustworthiness and reliability."); Trombley, 733 F.2d at 38-39 (essential element of crime admitted by defendant was corroborated by independent evidence). In a case very similar to the present case, the existence of a conspiracy to possess with intent to distribute cocaine was proven primarily by admissions of the defendant. We required that the after-the-fact admissions of the "essential fact" admitted be corroborated by independent evidence: "Consequently, the circumstantial evidence supports the essential fact admitted in the post-arrest statement (i.e., the existence of a cocaine distribution network) enough to justify an inference of the statement's truth." Pennell, 737 F.2d at 537-38. Here, there was no circumstantial evidence to support the existence of a conspiracy. Even if we inferred defendant got the cocaine he possessed from Addison, he could merely have purchased it. Nor is there evidence of any conspiracy involving Addison that Calhoun could have joined. Without the consideration of defendant's confession that he sold cocaine for Addison over a period of time, no jury could have concluded that Calhoun was involved in a conspiracy with Addison based on the facts that he fled from a home in which no drugs or drug paraphernalia were found and that he possessed a relatively small amount of cocaine and a gun. Nor do we believe that the fact the other crimes admitted to in the confession are corroborated permits the use of the confession to prove an uncorroborated crime. When the courts speak of an essential element, they are speaking of an element of the crime that the confession is being used to prove. We hold, therefore, that there was insufficient corroboration to admit the confession with respect to the conspiracy count and without it insufficient evidence to support defendant's conspiracy conviction.
 
 III. Denial of Motion to Suppress
 
 16
 Defendant contends that the District Court erred in denying his motion to suppress his post-arrest statements. Defendant asserts that he did not voluntarily waive his Miranda rights because 1) he wasn't told that what he said could be used against him, until after he confessed; and 2) he was led to believe that his statements wouldn't be used against him. At the motion hearing, the court expressed some concern in admitting the statements.
 
 
 17
 However, after stating its concerns, the court concluded that it believed the officers' testimony that they had in fact told defendant that what he said could be used against him, that defendant understood his rights and acknowledged this understanding. The court found it possible that Calhoun may have believed that his statements could not be used against him, but found incredible defendant's testimony that his rights were read to him only after he confessed. The court found other portions of defendant's testimony incredible as well. The court concluded:
 
 
 18
 The Court believes that, in fact, the agents did individually, advise the defendant of each of his Miranda rights, including the fact that anything he would say could be used against him in court.
 
 
 19
 ....
 
 
 20
 The Court believes that the defendant had every reason to believe that anything he said could be used against him, that the police complied with the requirements of Miranda and that, following the appropriate giving of his Miranda rights, the defendant freely and voluntarily made the statements which have been offered into evidence.
 
 
 21
 Joint App. at 88.
 
 
 22
 When reviewing the denial of a motion to suppress, we review the District Court's conclusions of law de novo; the District Court's factual findings will be disturbed only if clearly erroneous. United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991). When based upon credibility determinations, factual findings are given even greater deference by this Court. The District Court's determination that the officers' testimony was more credible than Calhoun's is supported by the record and is not clear error.
 
 
 23
 Defendant claims that he was led to believe that what he said would not be used against him "because of his limited capacity or out of naive faith." However, "[e]vidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of coercion is always necessary." United States v. Newman, 889 F.2d 88, 94 (6th Cir.1989), cert. denied, 495 U.S. 959 (1990); see also Colorado v. Connelly, 479 U.S. 157, 170 (1989) ("Miranda protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes not further than that."); Moran v. Burbine, 475 U.S. 412, 421 (1986) ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception."). Here, defendant alleges no coercion on the part of the officers. Additionally, the court found that defendant was not induced to confess. Thus, the court committed no error when it denied defendant's motion to dismiss.
 
 IV. Ineffective Assistance of Counsel
 
 24
 Next, defendant argues that his trial counsel failed to provide him effective assistance because counsel failed to request a jury instruction on the corroboration requirement. Defendant did not make this argument below. Ordinarily, this Court will not review an ineffective assistance of counsel claim raised for the first time on appeal. United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). We have, however, recognized an exception to this general rule where the record is adequate to assess defendant's allegations of incompetent counsel. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (per curiam). We do not believe that this exception is applicable in this case. Ineffective assistance of counsel claims should be brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255, so that the parties can develop an adequate record on the issue. Daniel, 956 F.2d at 543. Because defendant raises his ineffective assistance of counsel claim for the first time on appeal and the record is inadequate to assess the merits of the claim, we will not review it.
 
 V.
 
 25
 Defendant's convictions for possession with intent to distribute crack cocaine and for carrying a firearm in relation to a drug trafficking crime are AFFIRMED. Defendant's conspiracy conviction is REVERSED. The case is REMANDED for resentencing.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Defendant also argues that the District Court erred in failing to sua sponte instruct the jury that independent corroboration of the confession was required. However, defendant neither objected to the court's failure to give this instruction, nor requested that it be given. Defendant has therefore waived this objection. Fed.R.Crim.P. 30