RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

         *Plaintiff-Appellant,*

    *v.*

No. 09-5431

DAVID E. BROWN,

         *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 06-00078-001—Harry S. Mattice, Jr., District Judge.

Argued: August 6, 2010

Decided and Filed: August 24, 2010

Before: SUTTON and McKEAGUE, Circuit Judges; JONKER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellant. Mary Ellen Coleman, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Debra A. Breneman, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellant. Mary Ellen Coleman, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellee.

---

[*]The Honorable Robert J. Jonker, United States District Judge for the Western District of Michigan, sitting by designation.

1

_____

**OPINION**

_____

SUTTON, Circuit Judge.  A jury convicted David Brown of being a felon in possession of a firearm.  18 U.S.C. § 922(g)(1).  Brown moved for a post-verdict judgment of acquittal, arguing that the sole evidence presented against him at trial—his confession—could not support the jury's verdict. Invoking the "corroboration rule," the district court agreed with Brown and acquitted him. The United States appeals. Because sufficient independent evidence establishes the trustworthiness of Brown's statements, we reverse.

I.

In April 2006, Jason Helms reported that someone had stolen a Glock .40 caliber pistol and a silver necklace from his home in Cleveland, Tennessee.  Helms suspected that an acquaintance, David Brown, might be the culprit.  He relayed his suspicion to Detective Robert Harbison, who learned that Brown was staying at his cousin's house and eventually found Brown sleeping on the couch there.  Harbison woke Brown, identified himself, explained the reason for his visit and asked to speak with him.  Brown consented and the two men went outside, where Helms stood waiting.  Helms and Harbison explained that they did not "want [Brown] to go to jail," that Helms "just wanted his gun back" and that, if Brown "[gave] the gun to Mr. Helms," he could "go back in[side] and go to sleep." R.78, 5.  Brown responded that he had traded the gun for methamphetamine in a neighboring county and that he "[could] get the gun back." R.78, 5.  He refused to divulge to whom he traded the gun or where it might be.

Harbison took Brown to the police station for further questioning.  Once there, Harbison read Brown his *Miranda* rights, and Brown waived them.  Brown gave a tape-recorded confession, saying that he entered Helms' house and stole the Glock .40 and the silver necklace.  He refused once again, however, to disclose who had the gun, pledging only that he would get it back.  Several days later, Brown's mother called

Harbison with a similar promise:  She would get the gun and return it.  The gun was never recovered.

Two months later, a federal grand jury indicted Brown for being a felon in possession of a firearm on the basis of Brown's confession that he had taken—and therefore possessed—Helms' gun.  18 U.S.C. § 922(g)(1).  Detective Carl Maskew arrested Brown and brought him to the county jail, where he again administered Brown his *Miranda* rights.  Brown again agreed to speak with Maskew and signed another waiver form.

This time, Brown's story changed.  He said that he knew nothing about the stolen gun.  During his prior confession, he explained, he was confused as to which gun Harbison was asking him about.  The gun that he traded for methamphetamine, he now insisted, was not Helms' Glock .40, but a Glock .22 that he received as payment for some landscaping work.

Minutes later, Brown revised his story again.  Two acquaintances, he said, broke into Helms' house and stole the gun and the necklace.  They gave Brown the Glock .40 a day or so after the burglary.  Brown traded the gun to his cousin Jimmy Chambers for 30 to 40 dollars' worth of methamphetamine.  He told Maskew that "if possible" he "[would] help try to find" the missing gun.  R.78, 25.

Brown went to trial on the felon-in-possession charge.  He stipulated that he was a convicted felon and that the gun at hand had traveled in interstate commerce, leaving the government to prove that Brown knowingly possessed it.  *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).  The government played Brown's tape-recorded confession for the jury and offered the testimony of Detectives Harbison and Maskew, who both described their conversations with Brown.  Brown testified.  He recanted his confession to Harbison, blaming it on a methamphetamine and morphine binge and insisting that he could not remember speaking with Harbison.  He also disclaimed making any statements to Maskew and denied that he ever possessed a gun, be it Helms' Glock .40 or the Glock .22 he referenced during his interview with Maskew.  The jury found him guilty.

After his conviction, Brown renewed his motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  He argued that the only thing linking him to the crime was his uncorroborated confession, which by itself could not sustain the verdict.  The district court agreed and acquitted Brown.

## II.

A dusty doctrine of criminal law—the "corroboration rule"—lies at the heart of this appeal.  Rooted in English common law and embraced by the United States Supreme Court in the 1950s, the rule says that no one may be convicted of a crime based solely on his uncorroborated confession. *Opper v. United States*, 348 U.S. 84, 89, 93 (1954); *see also Smith v. United States*, 348 U.S. 147, 156 (1954); *United States v. Calderon*, 348 U.S. 160, 165 (1954).  Early versions of the rule developed in 17th-century England when a series of suspects confessed to murders, only to have their alleged victims turn up—alive and well—long after the suspects were imprisoned (or, worse, executed) for the fictitious crimes.  *See* Thomas A. Mullen, *Rule Without Reason:  Requiring Independent Proof of the* Corpus Delicti *as a Condition of Admitting an Extrajudicial Confession*, 27 U.S.F. L. Rev. 385, 399–401 (1993) (citing *Perry's Case*, 14 How. St. Tr. 1311 (1600)).  First known as the *corpus delicti*, or "body of a crime," rule, the doctrine guarded against convictions for imaginary crimes by requiring prosecutors to demonstrate through independent evidence that the crime occurred before they could use an accused's own statements to establish guilt.  *Smith*, 348 U.S. at 153–54; *see also United States v. Sterling*, 555 F.3d 452, 456 (5th Cir. 2009).

Today's corroboration rule differs from its predecessor in form but not in function.  Wary that "[the] weakness of the accused under the strain of suspicion" may cause the accused to give a false, even if voluntary, confession, *Opper*, 348 U.S. at 90, the Supreme Court in 1954 embraced a variation on the rule to prevent "errors in convictions based upon untrue confessions alone," *Smith*, 348 U.S. at 153.  Unlike the *corpus delicti* rule, the government need not introduce evidence independent of the accused's confession to establish that the *crime* occurred.  *Opper*, 348 U.S. at 93.  The government instead generally may satisfy the rule if it introduces "substantial

independent evidence which would tend to establish the trustworthiness of the *statement*," *id*. (emphasis added), an approach that has the virtue of ensuring that these trustworthiness considerations extend to all confessions, including those in which no one doubts a crime occurred, only who committed it.

The corroboration requirement, it bears adding, differs from another requirement—that the confession be voluntary. Voluntariness goes to admissibility, while corroboration goes to sufficiency. *See Smith*, 348 U.S. at 153. Federal courts thus may admit confessions into evidence as voluntary, then later reject them as uncorroborated on the theory that even voluntary "inculpatory confessions . . . are frequently unreliable," and jurors ought not "vote to convict based upon such statements alone." *United States v. Bryce*, 208 F.3d 346, 355 (2d Cir. 1999).

Throughout its tenure, the corroboration rule has received mixed reviews in the federal courts. As far back as 1918, Judge Learned Hand doubted whether the rule had "any substantial necessity in justice" but did "not feel at liberty to disregard a principle so commonly accepted." *Daeche v. United States*, 250 F. 566, 571 (2d Cir.). A panel of our court expressed a similar sentiment two decades later, saying it did not "feel free to cast [the rule] aside" "because of the fixed rule of most courts that corroboration of a confession is necessary," even though it "kn[ew] of no good reason why [properly obtained confessions] need corroboration." *Anderson v. United States*, 124 F.2d 58, 65 (6th Cir. 1941), *rev'd on other grounds*, 318 U.S. 350 (1943). Even the Supreme Court did not adopt the rule without reservation. Because the rule "infringe[s] on the province of the primary finder of facts," the Court cautioned, "its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them." *Smith*, 348 U.S. at 153.

The passage of time has not diminished ambivalence about the rule. False confessions, on the one hand, have not disappeared, and they provide a modern justification for continuing to respect the rule. The emergence of several new criminal procedure protections over the last several decades, on the other hand, has altered the role of the rule. Since 1954, the Court has constitutionalized several areas of criminal

law, many to the end of preventing false and uncounseled confessions. Not the least of these are the requirement that law enforcement read custodial suspects their rights before interrogating them, *Miranda v. Arizona*, 384 U.S. 436 (1966), the requirement that interrogations cease upon a suspect's request for an attorney, *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1991), and the multi-factor inquiry courts undertake to ensure the voluntariness of confessions, *see, e.g.*, *Withrow v. Williams*, 507 U.S. 680, 689 (1993).

In the aftermath of these developments, some question whether the corroboration rule has outlived its utility and ought to be treated as a quaint, though now irrelevant, reminder of the Court's pre-*Miranda* days. *See, e.g.*, *United States v. Dalhouse*, 534 F.3d 803, 806 (7th Cir. 2008) ("What the rule accomplishes is open to debate."); *United States v. Dickerson*, 163 F.3d 639, 641 & n.2 (D.C. Cir. 1999) ("[We are] doubtful" "that the Supreme Court would today rule as it did in 1954."); *see also* 1 McCormick on Evidence § 145 (6th ed.) ("[T]he development of . . . Fifth Amendment protections" has diminished "concerns regarding . . . interrogation practices" as well as "support for the corroboration requirement."); 7 Wigmore, Evidence § 2070 p. 510 (Chadbourn rev. 1978) (False confessions of guilt are "exceedingly rare" and the corroboration rule is often an "obstruction to the course of justice."); Mullen, *supra*, at 418 ("[T]he corroboration requirement" "should be abolished."). Others say that the rule continues to provide a real—and necessary—check on false confessions. *See* Saul M. Kassin, et al., *Police-Induced Confessions: Risk Factors and Recommendations*, 34 Law & Hum. Behav. 3 (2010); Talia Fisher & Issachar Rosen-Zvi, *The Confessional Penalty*, 30 Cardozo L. Rev. 871 (2008). Through it all, the Supreme Court has not revisited the rule since 1954.

Developments in interrogation law provide one source of uncertainty about the modern role of the rule. Another source is the development of modern sufficiency-of-the-evidence rules. Years after adopting the corroboration rule, the Supreme Court recognized that criminal defendants have a due process right to have their convictions supported by evidence that leaves no reasonable doubt about their guilt. *Jackson v. Virginia*, 443 U.S. 307, 316–17 (1979); *In re Winship*, 397 U.S. 358, 364 (1970).

"[V]iewing the evidence in the light most favorable to the prosecution," the federal courts now must ensure that the prosecution meets its burden of establishing sufficient evidence from which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis omitted). There is some tension between *Jackson* and the corroboration rule. If viewed in the light most favorable to the prosecution, most confessions by themselves would seem to meet the *Jackson* standard, yet a reviewing court nonetheless would have to invalidate the conviction if no corroborating evidence supported it. Adding to the puzzle is the reality that the corroboration rule is thought of as a non-constitutional rule. *See Jackson*, 443 U.S. at 330 n.1 (Stevens, J., concurring); *Williams v. Chapleau*, No. 97-6015, 2000 U.S. App. Lexis 195, at *10 (6th Cir. Jan. 4, 2000) (declining to apply the rule to a habeas claim). Perhaps that is right, and the common law rule merely builds on the due process constitutional floor (later) established by *Jackson*. Or perhaps the venerability of the rule is a constitutional virtue, not just a common law one, making it a component of the due process protections provided by the Fifth and Fourteenth Amendments. Either way, there is no getting around the reality that there is tension between the corroboration common law rule and the *Jackson* constitutional rule.

All of this may suggest that the modern justifications for the rule and the scope of it warrant a reassessment. But, for now, none of this alters our obligation to follow it.

III.

It is one thing to state the corroboration rule (and the purposes it serves) and another to apply it. Here are the ground rules:

- The independent corroborating evidence "does not" by itself "have to prove the offense beyond a reasonable doubt, or even by a preponderance." *Smith*, 348 U.S. at 156. Nor does it have to prove "each element of the offense charged." *United States v. Trombley*, 733 F.2d 35, 37 (6th Cir. 1984). Rather, "[t]he purpose of corroboration is" merely "to ensure the reliability of the confession or admission of the accused." *Id.*

- When an accused confesses to a crime involving "physical damage to person or property," the independent corroborating evidence need only show that the crime occurred. *Wong Sun v. United States*, 371 U.S. 471, 489–90 n.15 (1963). The prosecution need not show that the independent evidence ties the accused to the crime. *Id.*; *see also United States v. Daniels*, 528 F.2d 705, 707–08 (6th Cir. 1976) (When a suspect confesses to a bank robbery, showing that a bank robbery occurred satisfies the corroboration requirement.).

- But when an accused confesses to a crime for which there is "no tangible injury" and "it cannot be shown that [a] crime has been committed without identifying the accused," *Smith*, 348 U.S. at 154, "the corroborative evidence must implicate the accused," *Wong Sun*, 371 U.S. at 489–90 n.15 (citations omitted); *see also United States v. Shunk*, 881 F.2d 917, 920–21 (10th Cir. 1989) (Statement of gun seller that defendant bought a gun from him is sufficient corroborating evidence to convict the defendant of being a felon in possession of a firearm.).

- And for either type of crime, "one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Smith*, 348 U.S. at 156. If, for example, a defendant admits that he drove a car that had an illegal sawed-off shotgun in its trunk, it is sufficient for the independent corroborating evidence to show that he drove that particular car. *Cf. United States v. Davis*, 459 F.2d 167, 171 (6th Cir. 1972).

*Did "substantial independent evidence" corroborate Brown's confession?* Brown confessed on two separate occasions to possessing Helms' Glock .40, saying to Harbison that he obtained the gun by robbing Helms' house and to Maskew that two acquaintances gave him the gun after *they* robbed Helms' house. Despite Brown's wavering over *who* committed the robbery, both statements have several unifying themes: (1) Helms' Glock .40 had been stolen from Helms' house, along with a silver necklace; (2) Brown at some point acquired the Glock .40; and (3) Brown sold the Glock .40 for methamphetamine. Independent evidence—Harbison's testimony about the

police report—corroborates point one: A Glock .40 and a silver necklace were stolen from Helms' house. R.78, 2, 8 (Helms "filed an offense report reporting that his residence had been broke[n] into," and "a Glock .40 caliber pistol was taken, and, also, a chain, some kind of jewelry."). And independent corroboration of one part of the statement may corroborate the entire statement, including the part in which Brown admits possessing a firearm. *See Smith*, 348 U.S. at 156; *United States v. Deville*, 278 F.3d 500, 506 (5th Cir. 2002); *Trombley*, 733 F.2d at 37–38. The independently established fact that certain specified items were stolen from Helms' house thus lends support to Brown's confession that he possessed the gun.

Brown takes issue with the corroborating effect of the independent evidence establishing the robbery at Helms' house, saying that "proof that the burglary occurred" would corroborate his statements *only* if "Brown [had] been charged with burglary." Brown Br. 13. Not so. Independent proof that the burglary occurred, it is no doubt true, would corroborate Brown's confession to burglary. But that is not all. The same independent proof also corroborates Brown's statement as a whole, including his admission to possessing a firearm. *Smith*, 348 U.S. at 156; *Opper*, 348 U.S. at 93. Viewing the evidence in the light most favorable to the prosecution, a rational juror reasonably could accept Brown's first *Mirandized* statement, in which he confessed to robbing Harbison's home and to stealing the gun, as truthful and reject his second, more convoluted confession as unreliable. Once a rational juror accepted the truth of Brown's confession to the burglary—a part of the confession that all agree was adequately corroborated by the reality that the burglary occurred—it takes but a small step to conclude that Brown possessed the firearm. Brown offers no explanation how he could steal something yet never "possess" it. Nor can we think of one, at least when it comes to thefts committed by a single robber.

*United States v. Calhoun*, No. 92-2011, 1993 WL 280324 (6th Cir. July 26, 1993), is not to the contrary. In an unpublished, per curiam decision, *Calhoun* held that, when a defendant confesses to drug possession as well as to drug conspiracy, independent corroboration of one crime (possession) does not by itself "permit[] the use

of the confession to prove" another crime (conspiracy). *Id*. at *3. Yet the corroborating evidence there—that the police found a "small amount" of drugs near Calhoun—did not indicate that Calhoun was also involved in a conspiracy, as opposed to merely being a recent purchaser of drugs. *Id.* Here, the corroborating evidence—that the type of gun stolen from Helms' house was the type Brown admitted to possessing—"implicate[s]" Brown in the charged crime. *Wong Sun*, 371 U.S. at 489–90 n.15. The independent evidence provided sufficient corroboration.

IV.

For these reasons, we reverse the district court's judgment of acquittal and remand the case for further proceedings.