**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 12a0522n.06**

No. 11-6243

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*May 18, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| CAROLYN JOHNSON | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

**BEFORE: NORRIS, CLAY and GRIFFIN, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Defendant Carolyn Johnson appeals from her jury

conviction on three counts of unlawfully transferring a firearm in violation of 18 U.S.C. §§ 922(a)(5)

& 924(a)(1)(D). The firearms at issue included three .25 caliber semi-automatic pistols. Defendant

transferred them to her adult son, Jason Johnson. On appeal she challenges the denial of her motions

for judgment of acquittal, the substance of a jury instruction, the admission of testimony concerning

a federally administered firearms license database, and the sufficiency of the evidence.

For the reasons that follow, the judgment is affirmed.

**I.**

On December 17, 2008, a grand jury charged John Rieben with one count of dealing in

firearms without a license and defendant with three counts of illegally transferring firearms to a

resident of another state. Prior to defendant's trial, Rieben testified in a video deposition that he

lived in Paris, Tennessee and had purchased firearms at Harold Blow's Gun and Coin Shop, which

he would then sell or trade at the Huntingdon Flea Market. When he was asked about firearms dealings with a woman, presumably defendant, he denied knowing her name and described her as "kind of [a] heavyset woman" who sold jewelry at the market from a little truck. He could not identify her, nor could he remember the number of firearms that he sold to her or their price.

He was reminded that on April 19, 2006, he was visited by law enforcement agents who informed him that certain of the firearms that he had sold had been recovered in Chicago. In his deposition, Rieben denied having contacts in that city or knowing how they got there. However, he signed a statement during the 2006 interview, which included the following information:

> Sometime last summer [2005], a middle aged white heavy set woman asked me if I had any handguns to sell her. . . . I had a .25 caliber semi-automatic to sell her and she bought it from me for approximately $75.00.

> Between the first time I met the above listed woman and the last transaction with her, I have seen her at the Trading days about once a month. Once I saw her with a white male, approximately 25 yrs. old, approximately 6'00" and medium build. I asked around and found out that the boy was her son and that he lived in Chicago.

> In total, I have sold this woman approximately 6 handguns in the past year. I have never sold any firearms to her son. I have never sold the woman any firearms except for handguns.

He corroborated these statements during his deposition. He was also told that the firearms recovered in Chicago had had their serial numbers obliterated. Rieben denied knowing how that had occurred.

At trial, Roy Boyd, an employee of Harold Blow's Gun and Coin Shop testified that he sold firearms to Rieben. Boyd identified the firearms, including the three named in the indictment, and noted that their serial numbers had been tampered with since he sold them.

Three Chicago police officers confirmed that the three firearms had been recovered in Chicago in the wake of a shooting. A fourth officer, Detective Michael Corlett, testified that he was watching Jason Johnson's residence in February 2006. In all, Johnson's residence was under surveillance for five to six weeks and he was seen there on a daily basis. On March 12, 2006, Corlett stopped Johnson while driving a car registered to Carol Wing, his girlfriend and the mother of his children. Johnson gave Corlett permission to search both his car and his apartment. Johnson let the officer in with a key.[1]

Other evidence was offered to establish Jason Johnson's Illinois residency. Bruce Tanner, who worked at the Illinois Secretary of State's office, testified that Johnson stated that he was a resident living in Harwood Heights, Illinois, when he applied for a driver's license in 2004. The license was valid for five years. By contrast, Lydia Flood – keeper of the records for the Paris, Tennessee Board of Public Utilities – stated that defendant had the utilities at her residence in Henry, Tennessee turned on as of March 28, 2005 and not turned off until 2009.

With respect to defendant's knowledge of her illegal activity, Agent Michael Rowland of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") verified transcriptions of three tape recordings of conversations between confidential informant Timothy McMacklin and defendant recorded in March 2006. On March 3, defendant asked McMacklin if he had a .45 automatic. She had a client willing to pay $350 for one. She also asked about .25 caliber guns. When asked if it mattered if the guns had serial numbers, she replied "it don't matter to me at all." In the next call, recorded on

---

[1] Johnson's residence in Chicago is important to establish the interstate commerce aspect of the charges lodged against his mother.

March 14, the two discussed the traffic stop conducted by Detective Corlett of Jason Johnson, as well as the search of the residence. Defendant told McMacklin that she was not "buying anything" due to the police activity. She went on to muse that "now that the ATF is coming after John [Rieben] and everything . . . there's something ain't right somewhere, I don't know where, but I don't know how they connected . . . Chicago to here." She resumed this theme in a March 31 call, in which defendant mentioned that her son had decided against bringing guns back to Chicago from Tennessee because of the Rieben investigation. She also spoke with ATF Agent Steve Wiley at her home on October 1, 2008 in connection with this prosecution. According to Wiley's notes, defendant admitted that she had purchased guns at a flea market, all of which were taken to Chicago.

Finally, in order to establish that neither defendant nor her son were licensed to deal in firearms, the government called ATF Agent Olindo Casa over objection. He testified that he was familiar with the Federal Licensing System, including using its database to verify whether or not an individual is a licensed dealer.

The defense called two witnesses. Carol Wing, Jason Johnson's fiancee, said that the couple moved back and forth between Tennessee and Illinois during the time period in question. Jane Gibson, an employee of the Tennessee Department of Labor and Workforce Development, testified that Jason Johnson had applied for training to become a commercial trucker between June 2006 and April 2007.

As mentioned at the outset, the jury returned guilty verdicts on all counts.

**II.**

Defendant raises four issues on appeal, which we address in turn.

*1. Motions for Judgment of Acquittal*

This court recently reiterated the appropriate standard of review when a motion for a

judgment of acquittal has been denied:

> [T]his Court reviews de novo a district court's denial of a Rule 29 motion for judgment of acquittal based on the insufficiency of the evidence. *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002). The Court must construe the evidence in the light most favorable to the government, and then determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Hofstatter*, 8 F.3d 316, 324 (6th Cir. 1993). A defendant "bears a very heavy burden" in a sufficiency of the evidence challenge. *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005) (internal citations omitted).

*United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012) (citations omitted).

Defense counsel moved for a judgment of acquittal at the close of the government's case and

at the close of the evidence. The crux of defendant's argument was that the government had failed

to offer sufficient evidence to show that she actually possessed and transferred the handguns listed

in the indictment. The district court denied both motions but acknowledged that the evidence

establishing defendant's possession of the handguns was tenuous. Recognizing that Agent Wiley's

report of his interview of defendant – in which she "acknowledged that the firearms she purchased

were all taken to Chicago" – was the most damaging evidence on the element of possession, defense

counsel argued that the government had failed to offer corroborative evidence to support the

admission of these statements against her own interest. Without Wiley's report, the evidence was

constitutionally insufficient to support guilt beyond a reasonable doubt on the element of possession.

The district court denied the motion for acquittal but indicated that defendant would be entitled to a jury instruction on the issue of corroboration. Because of its importance in determining whether defendant was entitled to a judgment of acquittal, we turn first to the corroborating evidence rule. Although it dates from the English common law, the present day version of the rule was established by the Supreme Court in 1954. In *Opper v. United States*, 348 U.S. 84 (1954), the Court considered extra-judicial statements made by an accused that were "admissions of essential facts or elements of the crime" and concluded that they were "of the same character as confessions and that corroboration should be required." *Id.* at 90. That being the case, how much corroboration is needed? The Court answered,

> [W]e think . . . that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.

*Id.* at 93 (citation omitted); *see also Smith v. United States*, 348 U.S. 147, 155 (1954) ("An admission which assumes this importance in the presentation of the prosecution's case should not go uncorroborated, and this is true whether we consider the statement an admission of one of the formal 'elements' of the crime or of a fact subsidiary to the proof of these 'elements.'").

Recently, this court surveyed the history of the rule, noting along the way that developments in interrogation law have cast doubt on the continuing need for the corroboration rule. *United States v. Brown*, 617 F.3d 857, 861 (6th Cir. 2010) (explaining that there is "[S]ome question whether the

corroboration rule has outlived its utility and ought to be treated as a quaint, though now irrelevant, reminder of the Court's pre-*Miranda* days"). Despite these reservations, we recognized that the rule remains viable and provided a framework for its application: 1) independent corroborating evidence does not have to prove the offense beyond a reasonable doubt; 2) when, as here, the offense does not result in a tangible injury, then the corroborating evidence must implicate the accused; and, 3) one available mode of corroboration is for independent evidence to bolster the confession itself and thereby prove the offense thought the statements of the accused. *Id.* at 862.

Given that we must view the evidence in a light most favorable to the prosecution, *Clay*, 667 F.3d at 693, and that to corroborate a statement against interest the government need only introduce substantial independent evidence to establish the trustworthiness of the statement, *Brown*, 617 F.3d at 860, we affirm the district court's decision to deny the defendant's motions for judgment of acquittal and to permit the case to go the jury. The following circumstantial evidence supports the conclusion that the statements made to Agent Wiley were sufficiently corroborated: Rieben stated that he sold several .25 caliber semi automatic pistols to a "middle-aged white heavy set woman"; the firearms were recovered in Chicago just a few months after their sale in Tennessee; Rieben had no connection to Chicago but defendant did; the serial numbers of the firearms were all similarly obliterated; and, most importantly, defendant told confidential informant McMacklin that her son had elected not to transport firearms due to the investigation into Rieben.

In sum, there was sufficient circumstantial evidence to corroborate Agent Wiley's report of his interview with defendant and, with this evidence in place, the district court properly concluded that the motions for judgment of acquittal must be denied.

2. Jury Instruction Regarding Corroboration

As promised, the district court instructed the jury on the issue of corroboration. On appeal, defendant contends that the instruction was improper and that the court should have adopted the instruction proposed by defense counsel without alteration. While we review the legal correctness of a jury instruction de novo, we review the refusal to give a specifically requested instruction for an abuse of discretion. *Fencorp, Co. v. Ohio Ky. Oil Corp.*, ___ F.3d ___, 2012 WL 1109648, at *7 (6th Cir. Apr. 4, 2012). The failure to give a requested jury instruction is an abuse of discretion when it is "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Franklin*, 415 F.3d 537, 553 (6th Cir. 2005). We review jury instructions "as a whole" in order to determine whether they "fairly and adequately submit [ ] the issues and applicable law to the jury." *Id.* (internal quotation marks and citations omitted).

Defense counsel asked the district court to give a jury instruction modeled on one that we approved in *United States v. Adams*, 583 F.3d 457, 468-69 (6th Cir. 2009). In that case, defendant requested this simple instruction regarding his own statements against interest:

> Evidence has been presented that the Defendant, Wilbur B. Adams, Jr., admitted that he possessed the firearm as described in the Indictment. You may not convict Wilbur B. Adams, Jr. solely upon his own uncorroborated statement or admission.

*Id.* at 468. The district court denied the request and this court reversed, stating, "[u]nder binding precedent in this Circuit, the instruction is required notwithstanding the existence of additional corroborating evidence." *Id.* at 469.

In this case, the government asked the district court to further define corroboration consistent with *Brown, supra.* The court explained that the *Adams* instruction was but one example of a valid instruction as to corroboration, and accepted the government's request. It instructed the jury as follows:

> [E]vidence was presented in this case by the United States that defendant, Carolyn Johnson, admitted that she transferred firearms without Federal Firearms License to another person who lived outside of the State of Tennessee.
>
> You may not convict defendant, Carolyn Johnson, solely upon her own uncorroborated statement or admission. *However, one available mode of corroboration is for the independent evidence to bolster the confession itself, and thereby prove the offense through the statements of the accused.*

(language proposed by government in italics). In our view, the jury instruction accurately reflected the law of the circuit. This is not a case in which a requested instruction was not given; rather, the district court simply concluded that the additional explanation was appropriate. The district court did not abuse its discretion in giving the instruction that it did and we therefore affirm on this issue.

### 3. The Admission of Agent Casa's Testimony

Next, defendant contends that Agent Casa should not have been permitted to testify concerning the federal licensing system for firearms. One element of 18 U.S.C. § 922(a)(5) is that defendant was not a licensed dealer. The government offered the testimony of Agent Casa to establish that she was not, contending that it was admissible pursuant to Federal Rule of Evidence 803(6), which permits the introduction of records of regularly conducted activities.

Casa's testimony began by establishing his qualifications: he explained his role with the ATF as an inspector whose duties included using the federal licensing system and its database on a routine

basis.  He then summarized the various ways that one can query the database to establish whether an individual is a licensed dealer.   When government counsel then submitted to the court that Casa was qualified to "testify as to the accuracy of these records," defense counsel objected:

> I'm maintaining that he understands how to do a query, and he understands that to get into the database you have to make an application as accepted at that particular district center, but beyond that I don't think he has any real knowledge of maintaining records, of what records are allowed to be used for or  not to be used for, what the policies and procedures are for records keeping and record use.

The district court overruled the objection, relying upon our decision in *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986).  In *Hathaway*, defendant objected to the use of an FBI agent to lay the requisite foundation for the introduction of business records.  We affirmed on this basis:

> [T]here is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted. When a witness is used to lay the foundation for admitting records under Rule 803(6), all that is required is that the witness be familiar with the record keeping system. *See Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[02], at 803–178 (1985) ("The phrase 'other qualified witness' should be given the broadest interpretation; he need not be an employee of the entity so long as he understands the system.").

*Id.* at 906 (citations omitted).

We agree with the district court that *Hathaway* controls the outcome.   Agent Casa's testimony was sufficiently detailed to establish him as a "qualified witness" under Federal Rule of Evidence 803(6).

4.  *Sufficiency of the Evidence*

As cited earlier, defendant "bears a very heavy burden" in a sufficiency of the evidence challenge, *Clay*, 667 F.3d at 693 (citing *Davis*, 397 F.3d at 344), because we review such a challenge by construing the evidence in the light most favorable to the government and then assessing whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* (citing *Jackson* 443 U.S. at 319).  Given our rulings with respect to Agent Casa's testimony, the corroborating evidence which permits the introduction of Agent Wiley's statement, and the challenged jury instruction, defendant falls short of meeting her onerous burden.  The government introduced sufficient evidence on every element of the crime to support a rational juror's finding of guilt beyond a reasonable doubt.

**III.**

The judgment is **affirmed**.