NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0631n.06

No. 10-5150

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 26, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | **)** | |
| | **)** | |
| Plaintiff-Appellee, | **)** | ON APPEAL FROM THE UNITED |
| | **)** | STATES DISTRICT COURT FOR THE |
| v. | **)** | EASTERN DISTRICT OF TENNESSEE |
| | **)** | |
| ROBERT DESHAWN CAMPBELL, | **)** | OPINION |
| | **)** | |
| Defendant-Appellant. | **)** | |
| | **)** | |

**Before: BOGGS, GILMAN, and COOK, Circuit Judges**.

**RONALD LEE GILMAN, Circuit Judge**. In March 2009, a jury convicted Robert Deshawn Campbell of possessing crack cocaine, distributing crack cocaine, possessing a firearm in furtherance of a drug-trafficking offense, and being a felon in possession of a firearm. The physical evidence that led to these convictions was seized from Campbell after he was arrested outside of an illegal gambling hall in Knoxville, Tennessee.

Before trial, Campbell moved to suppress all of the evidence seized from his person on the night that he was arrested, as well as any statements that he made to law-enforcement officers that same night at the police station. The magistrate judge denied Campbell's motion to suppress.

At sentencing, the district court designated Campbell as an armed career criminal under 18 U.S.C. § 924(e) and as a career offender under the U.S. Sentencing Guidelines. The court then sentenced him to 360 months of imprisonment and to five years of supervised release.

Campbell now appeals his convictions and sentence. He argues that the evidence confiscated from his person and the statements that he made on the night that he was arrested should have been suppressed. Campbell also challenges the sufficiency of the evidence underlying several of his convictions. His final set of claims revolve around the procedural and substantive reasonableness of his sentence. For the reasons set forth below, we **AFFIRM** the judgement of the district court.

## I. BACKGROUND

In February 2005, after a several-month-long investigation into suspected illegal gambling activity taking place at Max's Lounge in Knoxville, local and federal law-enforcement agents executed a search warrant at that establishment. The warrant, which was issued by a state-court judge, permitted a search of Max's for evidence of illegal gambling.

Before executing the warrant, Todd Gilreath, the lead investigator, briefed all of the officers who were participating in the raid. The briefing explained the high-crime nature of the area and the threat posed to the officers' safety because of the high likelihood that the people inside of Max's would be armed. Investigator Gilreath then divided the operation into two parts: (1) the perimeter operation, which included the officers who would be dealing with any persons outside of Max's, and (2) the inside operation, which included those who would actually execute the search warrant.

After the briefing, all of the officers traveled to Max's in a caravan of marked and unmarked police cars. Investigator Gilreath expected to encounter a large number of people at Max's, so a total of 17 law-enforcement officers participated in the raid. When the caravan pulled into the parking lot, Investigator Gilreath noticed an individual, wearing a large puffy jacket, standing in the doorway

to Max's and another individual working on a car in the parking lot. He then saw the individual standing in the doorway, who was later identified as Campbell, look in Investigator Gilreath's direction and "rapidly c[o]me off the front porch." Investigator Gilreath immediately radioed to the other officers, "hey, you got one running." According to Investigator Gilreath, Campbell "came off [the porch] at a pace that concerned [him] to the point" that he decided to inform the other officers.

While Investigator Gilreath proceeded into Max's, some of the other officers, including Officer Claiborne, approached Campbell and ordered him to get on the ground. Officer Claiborne testified that he ordered Campbell to the ground because he feared for the officers' safety and because he believed that Campbell had been trying to avoid them. As Campbell was going down to the ground, he informed the officers that he had a gun on his belt. After hearing this information, the officers "put him on the ground, handcuffed him, . . . retrieved the gun," and searched his person, on which they found .8 grams of crack cocaine. Campbell was then placed under arrest and taken to the police station.

Upon arriving at the police station, Campbell was read his *Miranda* rights. Campbell acknowledged that he understood his rights and he signed a written waiver. He then told Officer Claiborne that he had previously obtained the gun from a drug user in exchange for two rocks of crack cocaine. Campbell was subsequently charged in a second superseding indictment as follows: Count 1, distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1); Count 2, possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c); Count 3, being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); Count 4, possessing cocaine base with the intent to distribute the drug, in violation of 21 U.S.C.

§ 841(a)(1); and Count 5, carrying a firearm during a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Before trial, Campbell moved to suppress all of the evidence obtained from him after he was ordered to the ground and searched in front of Max's. He argued that Investigator Gilreath and Officer Claiborne had neither probable cause nor reasonable suspicion to believe that Campbell had committed, or was about to commit, a crime, or that he was armed or dangerous prior to their stopping and frisking him. The magistrate judge heard testimony from Investigator Gilreath, Officer Claiborne, and Stewart Branner, the other man seen outside of Max's when the law-enforcement officers arrived to execute the search warrant.

After hearing the testimony of these three indviduals, the magistrate judge concluded that Campbell's evasive behavior, coupled with his proximity to Max's and his presence in a high-crime area, gave Investigator Gilreath and Officer Claiborne reasonable suspicion to believe that Campbell was serving as a lookout for the suspected criminal activity occurring inside Max's. He therefore concluded that Campbell's seizure was constitutionally permissible. The district court later accepted the magistrate judge's Report and Recommendation in full and denied Campbell's motion to suppress, thus allowing the admission at trial of the firearm, ammunition, and drugs taken from Campbell, as well as the statements that he made at the police station.

In another pretrial motion, Campbell sought permission to introduce expert testimony regarding the interstate-commerce element of Count 3 (being a felon in possession of a firearm). His economics expert would have testified that Campbell's possession of the firearm at issue "had no real or material impact on interstate commerce." The government opposed the motion, and the

magistrate judge, to whom the motion had been referred for disposition under 28 U.S.C. § 636(b), agreed with the government that the proposed testimony offered by Campbell's economics expert was irrelevant. He therefore excluded the expert's testimony.

The jury convicted Campbell on Counts 1 through 3 (distributing crack cocaine, possessing a firearm in furtherance of a drug-trafficking offense, and being a felon in possession of a firearm, respectively). On Count 4 (possessing crack with intent to distribute), the jury convicted Campbell of the lesser-included offense of simple possession of cocaine base. He was acquitted on Count 5 (carrying a firearm during and in relation to a drug-trafficking crime).

Campbell made several objections to the Presentence Report (PSR) at sentencing. First, he objected to the application of U.S. Sentencing Guidelines (U.S.S.G.) § 4B1.1, the career-offender provision. Before his conviction in this case, Campbell had been convicted of several other crimes, including two convictions for aggravated robbery, one conviction for aggravated assault, and one conviction for facilitation of second-degree murder. Campbell argued that his robbery and assault offenses should be considered together as one offense rather than as separate offenses because he was sentenced for all three on the same day. He further contended that his prior conviction for facilitation of second-degree murder should not be considered a predicate offense at all because mere facilitation is not a crime of violence.

The district court rejected both of these arguments. It concluded that because "there were intervening arrests prior to one or more of the predicate offenses[,] . . . there were enough separate prior felony convictions to support Defendant's classification as a career offender." The court also

concluded that facilitation of second-degree murder is a crime of violence, and could therefore be considered in sentencing Campbell as a career offender under U.S.S.G. § 4B1.1.

Campbell further objected to the application of the enhanced-penalty provision of the Armed Career Criminal Act (ACCA), codified in relevant part at 18 U.S.C. § 924(e), which requires a term of imprisonment of at least 15 years. He argued that his prior aggravated-robbery convictions should not be considered separate convictions for purposes of applying 18 U.S.C. § 924(e) because he was arrested for both on the same date. The district court rejected this argument, concluding that they should be considered separate predicate offenses because each aggravated robbery was *committed* on a different date.

Campbell also challenged the application of 18 U.S.C. § 924(e) on the ground that facilitation of second-degree murder is not a crime of violence. He asserted that if that conviction were excluded, and if his aggravated-robbery convictions were counted as just one conviction, he would have only two prior violent-crime convictions (one aggravated-assault conviction and one aggravated-robbery conviction) rather than the three required for application of 18 U.S.C. § 924(e). The district court rejected this argument. First, it had already concluded that the two aggravated-robbery convictions were separate predicate offenses. Second, the court had previously concluded that facilitation of second-degree murder qualified as a crime of violence. The court therefore held that Campbell was subject to being sentenced as an armed career offender under 18 U.S.C. § 924(e) because he was found guilty of violating 18 U.S.C. § 922(g) and has previous convictions for aggravated robbery, aggravated assault, and facilitation of second-degree murder.

Campbell next moved for a downward variance in his sentence based on his mental-health condition and his terrible upbringing as a child. The district court denied his motion, concluding that these factual arguments were insufficient to justify a downward variance. It also rejected Campbell's argument that he should receive a reduced sentence because he told the police that he was in possession of a firearm and a controlled substance. The court concluded that these statements did not constitute substantial assistance because they did not provide the government with information that would help it curtail crime and criminal activity generally.

Campbell was then sentenced to 240 months' imprisonment for Count 1, 300 months' imprisonment for Count 3, and 12 months' imprisonment for Count 4, all of which were to be served concurrently. He was further sentenced to a term of 60 months of imprisonment on Count 2, which was to be served consecutively to the terms imposed for the other three counts, for a total of 360 months of imprisonment and five years of supervised release. The court noted that "[t]his term is at the bottom of the . . . Advisory Guideline Range," which is 360 months to life imprisonment for a defendant being sentenced as a career offender. It reasoned that this sentence reflected, among other things, the seriousness of Campbell's conduct and his lengthy criminal history.

Campbell now appeals his convictions and sentence. He raises six issues on appeal: (1) whether the evidence seized from him at Max's and the statements that he made at the police station should have been suppressed, (2) whether the evidence was sufficient to support his convictions, (3) whether his expert's testimony regarding the interstate-commerce element of Count 3 (being a felon in possession of a firearm) should have been admitted, (4) whether the career-offender and armed-career-criminal designations were applicable to him, (5) whether his motion for

a downward variance was improperly denied, and (6) whether the five-year consecutive mandatory-minimum sentence under 18 U.S.C. § 924(c) is applicable to him.

## II. ANALYSIS

### A. Suppression of evidence

"We review a district court's factual findings on a motion to suppress under the clear-error standard and review its legal conclusions de novo." *United States v. Taylor*, 600 F.3d 678, 680 (6th Cir. 2010). "When reviewing these factual findings, we consider the evidence in the light most likely to support the district court's decision." *Id.* (internal quotation marks omitted). Campbell does not challenge the facts as set forth by the magistrate judge in his Report and Recommendation, which was later adopted by the district court. The issue is therefore the application of the law to those facts. *See United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (acknowledging that because the defendant did not challenge the facts as found by the magistrate and district judges, the only issue before the court was the application of the law to those facts).

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A seizure occurs when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court created an exception to the general Fourth Amendment requirement that a seizure must be based on probable cause. The Court held that police officers are permitted to conduct a brief investigatory stop "where a police officer observes unusual conduct which leads him reasonably to conclude . . . that criminal activity may be afoot and

that the persons with whom he is dealing may be armed and presently dangerous." *Id*. at 30. Such

a stop is justified based on the lower threshold of reasonable suspicion rather than on probable cause.

*Id.*

"Reasonable suspicion is, of course, a somewhat abstract concept." *Smoak v. Hall*, 460 F.3d

768, 778 (6th Cir. 2006) (internal quotation marks omitted). "To justify a brief, investigatory stop

under *Terry v. Ohio*, an officer must point to specific, articulable facts that give rise to a reasonable

suspicion that the suspect was engaged in criminal activity." *United States v. Gross*, 624 F.3d 309,

315 (6th Cir. 2010) (internal quotation marks omitted), *amended by* No. 08-4051 (6th Cir. June 15,

2011). The officer "must be able to articulate something more than an inchoate and unparticularized

suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks

omitted).

We examine the totality of the circumstances in determining whether reasonable suspicion

existed to justify a *Terry* stop. *Smoak*, 460 F.3d at 779. The reasonableness of a stop is determined

by two factors:

> (1) whether there was a proper basis for the stop . . . ; and (2) whether the degree of
> intrusion into the suspect's personal security was reasonably related in scope to the
> situation at hand, which is judged by examining the reasonableness of the officials'
> conduct given their suspicions and the surrounding circumstances.

*Id.* (internal quotation marks omitted).

The Supreme Court in *Terry* also authorized officers conducting a proper stop to frisk a

suspect "where it appears from the facts known to the officer that there is a reasonable likelihood that

the restrained individual is armed and the officer's safety is in jeopardy." *United States v. Roach*,

958 F.2d 679, 682 (6th Cir. 1992). In the present case, Campbell argues that he was unconstitutionally seized when Officer Claiborne stopped him and instructed him to get on the ground. He contends that the stop was an arrest effectuated without probable cause or, in the alternative, that even if probable cause was not required for the stop, his Fourth Amendment rights were violated when he was subjected to a *Terry* stop that was not supported by reasonable suspicion. He therefore asserts that any evidence obtained from the seizure, as well as the statements that he later made at the police station, should have been suppressed. Campbell does not challenge the *Terry* frisk that Officer Claiborne conducted after Campbell informed the officers that he was carrying a gun, so we need analyze only whether the officers had reasonable suspicion to stop Campbell in the first place.

As a preliminary matter, we conclude that Officer Claiborne's initial stop of Campbell and his request that Campbell get on the ground was not an arrest. The entire interaction occurred in a matter of seconds and, as he was going to the ground, Campbell told the officers that he had a gun on his person. Before learning that Campbell was carrying a gun, the officers did not use any force. And after learning of the gun, the officers were entitled to handcuff Campbell within the confines of a *Terry* stop. *See Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999) ("[T]he use of handcuffs [does not] exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution."). The limited nature of the initial stop, which lasted only seconds, combined with the fact that the officers did not initially use any force, makes Officer Claiborne's stop more analogous to a *Terry* stop than to an arrest.

We must next determine whether the *Terry* stop to which Campbell was subjected was supported by reasonable suspicion. The government cites four factors in support of its argument that Officer Claiborne had reasonable suspicion to stop Campbell: (1) Campbell was in a high-crime area, (2) Campbell took evasive action as the police approached, (3) Campbell was on the premises where a search warrant was being executed, and (4) Campbell appeared to be serving as a lookout for the suspected criminal activity inside Max's.

Factors that are innocent when considered in isolation may provide the basis for reasonable suspicion when viewed together by an experienced officer. *See United States v. Arvizu*, 534 U.S. 266, 273, 277 (2002) (determining that reasonable suspicion based on the totality of the circumstances surrounding a *Terry* stop "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person" (internal quotation marks omitted)). In *Illinois v. Wardlow*, 528 U.S. 119 (2000), for example, the Supreme Court held that the defendant's presence in a high-crime area and his unprovoked flight were relevant factors in conducting a *Terry* analysis. *Id.* at 124. The Court concluded that the officers had reasonable suspicion to stop Wardlow because his headlong flight was the "consummate act of evasion" and, although not necessarily indicative of wrongdoing, "it is certainly suggestive of such." *Id.* It further commented that

> unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not going about one's business; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Id*. at 125 (internal quotation marks omitted). Thus, the unprovoked nature of the flight is a relevant consideration in determining whether reasonable suspicion exists.

This court has recognized that "simply walking away from the police does not give rise to reasonable suspicion," but it has also held that the "the speed of the suspect's movements may be relevant in the totality of the circumstances." *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) (internal quotation marks omitted); *see also Lee v. Hefner*, 136 F. App'x 807, 812 (6th Cir. 2005) ("In short, the pace at which Jose retreated does not distinguish this case from *Wardlow*—the key fact is undisputed that Jose, upon observing a strange vehicle, Officer Hefner's patrol car, retreated."); *United States v. Gordon*, 231 F.3d 750, 757 (11th Cir. 2000) (noting that the Supreme Court in *Wardlow* "plainly did not hold that evidence of the defendant's unprovoked flight may not be considered unless it is headlong," and concluding that the defendant's quick walk/run after making eye contact with the police and his decision to drive away, coupled with the characteristics of the area, adequately justified the *Terry* stop (internal quotation marks omitted)).

Campbell argues that *Wardlow* is inapplicable to this case because he was unable to engage in "headlong" flight due to the fact that he has a bullet in one of his legs. But as the above-cited cases demonstrate, the speed at which Campbell fled is not determinative. Of greater significance here is that his decision to flee was unprovoked. Investigator Gilreath and Officer Claiborne therefore properly considered Campbell's quick exit from Max's front porch in determining whether to stop him.

The government further argues that the officers' belief that Campbell was acting as a lookout provides additional support for their reasonable suspicion. In reviewing whether law-enforcement

officers have reasonable suspicion to conduct a *Terry* stop, due weight must be given to the inferences they reasonably draw from the facts of the particular situation in front of them. *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) ("While reasonable suspicion must be based on more than 'ill-defined hunches,' officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" (quoting *Arvizu*, 534 U.S. at 273)).

Investigator Gilreath testified that he had conducted approximately 50 undercover gambling investigations and had executed about the same number of search warrants with respect to places allegedly used for illegal gambling activities. He explained that the typical organized gambling operation functions almost like an illegal lottery, where runners will go and collect numbers and bring them back to the gambling house. Investigator Gilreath further stated that because these illegal gambling houses are often holding a lot of money, they are susceptible to being robbed. The organizers therefore often employ an individual to "stand at the front door to block the doorway, [who] more likely than not will be armed." Based on his experience, Investigator Gilreath concluded that Campbell was acting as a lookout "to prevent someone from coming in and robbing them, and . . . to give them a heads up that the police were on the way in." He therefore ordered the other officers to "check [Campbell] out."

In sum, the factors to be aggregated in this case to determine whether the officers had reasonable suspicion to stop Campbell include: (1) Campbell's presence in a high-crime area, (2) his unprovoked evasive behavior upon seeing the police cars enter Max's parking lot, (3) his presence on the premises where a search warrant was about to be executed, and (4) Investigator Gilreath's and

Officer Claiborne's belief, based on their experience, that Campbell was serving as a lookout for the suspected criminal activity taking place inside Max's. Although these factors do not provide conclusive evidence that Campbell was engaged in criminal activity, they do provide at least a reasonable suspicion that criminal activity was afoot and that Campbell was likely complicit in that activity.

Officer Claiborne was therefore permitted to confront Campbell for the purpose of conducting a *Terry* stop. Any evidence obtained from that stop and the subsequent frisk, in addition to the statements that Campbell made at the police station, were properly admitted. Because we conclude that Officer Claiborne's *Terry* stop of Campbell was constitutional, we need not address the government's alternative argument that the stop was justified under *Michigan v. Summers*, 452 U.S. 692 (1981), based on the authority of the search warrant.

**B. Sufficiency of the evidence**

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court set forth the standard for challenges based on sufficiency of the evidence, holding that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original). "This is a very heavy burden" for the defendant to meet. *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011) (internal quotation marks omitted). The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Campbell challenges the sufficiency of the evidence related to his convictions on Counts 1, 2, and 3. Each argument is evaluated in turn below.

### 1. Sufficiency of the evidence for conviction on Count 1 (distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1))

Campbell's main challenge to the sufficiency of the evidence regarding his conviction for the distribution of a controlled substance (Count 1) is that the only supporting evidence was his uncorroborated statement given at the police station. But "corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." *Smith v. United States*, 348 U.S. 147, 156 (1954). "Nor does it have to prove each element of the offense charged." *United States v. Brown*, 617 F.3d 857, 862 (6th Cir. 2010) (internal quotation marks omitted). "The purpose of corroboration is to ensure the reliability of the confession or admission of the accused." *United States v. Trombley*, 733 F.2d 35, 37 (6th Cir. 1984).

So long as extrinsic evidence exists that tends to corroborate the confession, "the confession as a whole is admissible, and some elements of the offense may be proven entirely on the basis of a corroborated confession." *Id.* at 38. "[O]ne available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense through the statements of the accused." *Smith*, 348 U.S. at 156 (internal quotation marks omitted). "And independent corroboration of one part of the statement may corroborate the entire statement." *Brown*, 617 F.3d at 863.

In this case, ample physical evidence was seized from Campbell to corroborate his confession at the police station. Campbell admitted that he received the gun found on his person outside of Max's from a "junkie" in exchange for crack cocaine that Campbell provided in a transaction that occurred approximately two weeks before his arrest in this case. In addition, Campbell was found in possession of .8 grams of crack cocaine at the time of his arrest.

The firearm alone connects Campbell to the crime that he confessed to; namely, exchanging crack cocaine for that specific firearm. *See id.* (holding that the "independently established fact that certain specified items," including the gun that Brown possessed, "were stolen from Helms' house thus lends support to Brown's confession that he possessed the gun"). And the fact that Campbell possessed crack cocaine at the time he was arrested shows that he had access to the drug around the time he confessed to exchanging it for a firearm. Viewing the evidence in the light most favorable to the prosecution, a rational juror could have found beyond a reasonable doubt that Campbell had exchanged crack cocaine for the gun found on his person. The prosecution therefore presented sufficient evidence for the jury to convict Campbell on Count 1.

### 2. Sufficiency of the evidence for conviction on Count 2 (possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c))

With respect to the sufficiency of the evidence in connection with his conviction on Count 2, Campbell first argues that his conviction on that count should be overturned because it is based on the predicate offense in Count 1, which he contends should itself be set aside for lack of sufficient evidence. For the reasons set forth in Part II.B.1 above, however, we conclude that there was

sufficient evidence to support his conviction on Count 1.  We therefore reject Campbell's argument

that his conviction on Count 2 cannot be supported by the Count 1 drug offense.

Campbell next argues that his conduct did not violate 18 U.S.C. § 924(c) because trading

drugs for a firearm should not be considered a violation of that provision.  Section 924(c) provides

in pertinent part as follows:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking
> crime . . . for which the person may be prosecuted in a court of the United States,
> uses or carries a firearm, or who, in furtherance of any such crime, possesses a
> firearm, shall, in addition to the punishment provided for such crime of violence or
> drug trafficking crime . . . be sentenced to a term of imprisonment of not less than
> 5 years.

This court has held that § 924(c) criminalizes two separate offenses:  (1) using or carrying a firearm

during or in relation to a drug-trafficking crime, which connotes "more than mere possession and

requires some active employment of the firearm by the person committing the drug offense"; and

(2) possession of a firearm in furtherance of a drug-trafficking crime, which requires a showing that

the "firearm was possessed to advance or promote the commission of the underlying drug trafficking

offense." *United States v. Combs*, 369 F.3d 925, 932 (6th Cir. 2004) (brackets and internal quotation

marks omitted).

In *Watson v. United States*, 552 U.S. 74, 79 (2007), the Supreme Court held that a defendant

cannot be convicted under the "uses or carries" prong of § 924(c) simply by engaging in a barter

transaction in which the defendant exchanges drugs for a firearm.  *See id.* ("[W]hen Watson handed

over the drugs for the pistol, the informant or the agent used the pistol to get the drugs, . . . but

regular speech would not say that Watson himself used the pistol in the trade." (internal quotation

marks omitted)).  The Supreme Court, however, did not address the possession prong of § 924(c) in *Watson. Id.* at 83.

But this court did reach the possession prong in *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001).  It held that the "in furtherance" language found in the possession prong of § 924(c) requires that "the weapon must promote or facilitate the crime." *Id.*  Stated differently, there must be a specific nexus between the drug crime and the possession of the firearm in order to violate the possession prong of § 924(c). *Id.* at 462.  And in *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005), this court held that "the acquisition of a firearm in exchange for drugs is a sufficient specific nexus between the drugs and the guns to constitute possession in furtherance of the drug sale." *Id.* (internal quotation marks omitted).

So Campbell is correct that he cannot be convicted under the "uses or carries" prong of § 924(c).  Based on *Frederick*, however, he was properly convicted under the "possession" prong of the statute.  The evidence showed that (1) he possessed a gun, and (2) he received the gun in exchange for crack cocaine.  We therefore conclude that a rational juror could have found beyond a reasonable doubt that, based on this evidence, Campbell violated § 924(c)'s possession prong.

### 3. *Sufficiency of the evidence for conviction on Count 3 (being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g))*

Campbell next argues that there was insufficient evidence to support his conviction under 18 U.S.C. § 922(g) for being a felon in possession of a firearm.  He specifically asserts that the government failed to adequately prove the interstate-commerce nexus required by § 922(g). Section 922(g) provides that it is unlawful for any person convicted of a felony "to ship or transport in

interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." To prove a violation of § 922(g), the government must establish that "(1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).

In this case, Campbell stipulated that he had been previously convicted of a felony. And the evidence at trial showed that he possessed the firearm specified in the indictment, the same firearm that he admitted to possessing on the night that he was arrested outside of Max's. Because elements one and two are satisfied, Campbell's challenge focuses on the sufficiency of the evidence as it relates to the third element, the interstate-commerce element. Although Campbell stipulated that the firearm found in his possession in Tennessee was manufactured outside of the state, he asserts that the government nonetheless failed to prove that the firearm affected interstate commerce.

To aid in his defense on this point, Campbell proffered an economics expert who would have testified that Campbell's alleged possession of the firearm at issue "had no real or material impact on interstate commerce." But the magistrate judge excluded the proposed testimony, concluding that such testimony would have been irrelevant because "the government need only show that the firearm, at some point in time, crossed a state line prior to defendant's alleged possession."

We review the magistrate judge's decision to exclude the testimony of Campbell's expert witness under the abuse-of-discretion standard. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The magistrate judge relied on *Scarborough v. United States*, 431 U.S. 563 (1977), in

-19-

reaching his decision to exclude the expert's testimony. In *Scarborough*, the Supreme Court interpreted the predecessor to § 922(g). It held that a showing that the firearm had been, at some time, in interstate commerce was sufficient to prove the interstate-commerce element of the statute. *Id*. at 575. This court, in *United States v. Fish*, 928 F.2d 185, 186 (6th Cir. 1991), likewise decided that "firearms possessed in a state other than the state of manufacture constitute firearms in or affecting commerce." It therefore concluded that "evidence that the firearm was manufactured outside the state of possession is sufficient to prove an interstate commerce nexus in [a § 922(g)] case." *Id.*

Here, Campbell stipulated to the fact that the gun found in his possession in Tennessee was manufactured in Massachusetts. This stipulation alone satisfies the interstate-commerce element of § 922(g). *See id.* The magistrate judge therefore did not abuse his discretion in excluding Campbell's proffered expert testimony as irrelevant. And because a rational juror could have found beyond a reasonable doubt that the government had proven all of the elements for conviction under § 922(g), sufficient evidence existed for Campbell to be convicted on Count 3.

## C. Sentencing

Campbell's remaining issues all relate to his sentence. We review the sentence imposed by the district court for reasonableness. *Gall v. United States*, 552 U.S. 38, 46 (2007). "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review." *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010) (internal quotation marks omitted). "Review for reasonableness has both procedural and substantive components." *Id.* (internal quotation marks omitted).

When reviewing a sentence for procedural reasonableness, we look at three factors: whether the district court "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). "To determine if the district court properly calculated the applicable Guidelines range, we review the district court's findings of fact under the clear-error standard and its legal conclusions regarding application of the Guidelines de novo." *United States v. Holcomb*, 625 F.3d 287, 291 (6th Cir. 2010). "Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51.

Campbell makes three procedural-reasonableness arguments: (1) that he should not have been designated as a career offender or as an armed career criminal, (2) that the district court should have granted his request for a downward variance, and (3) that the five-year consecutive mandatory-minimum sentence under 18 U.S.C. § 924(c) should not have been applied to him. Each argument is dealt with in turn below.

### 1. *Armed-career-criminal and career-offender designations*

Campbell asserts that his prior convictions are insufficient to trigger the applications of either the ACCA's enhanced-penalty provision or the Guidelines' career-offender provision. For purposes of applying these provisions, the PSR specifies that Campbell has been previously convicted of, among other crimes, (1) facilitation of second-degree murder (arrest date May 18, 1996);

-21-

(2) aggravated assault (arrest date May 28, 1996); and (3) two separate offenses of aggravated robbery (arrest date October 1, 1996).

Campbell's first challenge to the district court's application of the ACCA's enhanced-penalty provision and the Guidelines' career-offender provision is that his conviction for facilitation of second-degree murder should not have been considered a violent crime. But Campbell has enough prior violent-felony convictions to classify him as an armed career criminal under the ACCA and as a career offender under the Guidelines even without consideration of his conviction for facilitation of second-degree murder. We thus have no need to decide the proper classification of Campbell's facilitation offense. Our analysis of the application of the ACCA's enhanced-penalty provision and the Guidelines' career-offender provision to Campbell will therefore be limited to his one conviction for aggravated assault and his two convictions for aggravated robbery.

Campbell's next challenge to the application of the ACCA's enhanced-penalty provision and to the career-offender provision of the Guidelines is that his prior felony convictions are insufficient in number to invoke those provisions. He asserts that his two convictions for aggravated robbery and the one for aggravated assault should constitute a single offense for purposes of applying U.S.S.G. § 4B.1 because he was sentenced for all three convictions on the same day. Campbell thus argues that, under the Guidelines, he has only one crime-of-violence conviction, a number insufficient to qualify him as a career offender. And under the ACCA, he contends that he has at most two prior convictions, which would leave him one short of the requisite three convictions required for application of the ACCA.

Because the ACCA's enhanced-penalty provision and the Guidelines' career-offender provision use different counting rules for purposes of determining which prior felony convictions count as predicate offenses, we will analyze each provision separately. We first turn to the ACCA, which is codified in relevant part at 18 U.S.C. § 924(e). It provides that

> [i]n the case of a person who violates section 922(g) [being a felon in possession of a firearm] of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

*Id.* at § 924(e)(1).

"[T]o trigger a sentence enhancement under the ACCA, a defendant's prior felony convictions must involve separate criminal episodes." *United States v. Martin*, 526 F.3d 926, 938 (6th Cir. 2008). "[O]ffenses are considered distinct criminal episodes if they occurred on occasions different from one another." *Id.* at 939 (internal quotation marks omitted). And "[t]wo offenses are committed on occasions different from one another if it is possible to discern the point at which the first offense is completed and the second offense begins." *Id*. (internal quotation marks omitted). The fact that the offenses were consolidated for sentencing, "even though such consolidation could be relevant under the otherwise applicable Sentencing Guidelines," is irrelevant under the ACCA "so long as the separate offenses for which the defendant was convicted occurred at different times and/or places." *Id*.

In this case, Campbell was convicted of committing an aggravated assault on May 25, 1996, and of committing aggravated robberies on September 15, 1996 and September 28, 1996. The dates on which these crimes were committed show that each of these convictions represents a separate

criminal episode under the ACCA. Campbell's argument that the aggravated assault and the two aggravated robberies should be considered a single offense because he was sentenced on the same date for all three clearly has no merit for the purposes of applying § 924(e). *See Martin*, 526 F.3d at 939.

In addition, Campbell concedes that the aggravated robberies and the aggravated assault are violent felonies. Campbell is thus subject to the enhanced-penalty provision in § 924(e) because he was found guilty of being a felon in possession of a firearm who has at least three qualifying prior violent-felony convictions. We therefore conclude that the district court did not abuse its discretion in designating Campbell as an armed career criminal under § 924(e).

Campbell raises similar arguments with regard to application of the Guidelines' career-offender provision. A defendant is a career offender under U.S.S.G. § 4B1.1 if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or controlled substance offense.

Campbell does not contest that the first two prongs of § 4B1.1 are met here. Rather, he argues that his prior violent-crime convictions for aggravated assault and aggravated robbery should be counted as a single offense under the Guidelines because he was sentenced for all three offenses on the same date.

U.S.S.G. § 4B1.2, which defines the terms used in § 4B1.1, states in relevant part that the term "two prior felony convictions" means "(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of . . . crime[s] of violence . . . ,

and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a) . . . ." And under U.S.S.G. § 4A1.1(a),

> [p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

U.S.S.G. § 4A1.2(a)(2).

Here, Campbell has the following felony convictions relevant to applying U.S.S.G. § 4B1.1, the career-offender provision: (1) aggravated assault, and (2) two aggravated robberies. He committed the aggravated robberies, for which he was arrested on the same date, after his arrest for the aggravated assault. Campbell ignores the arrest dates and instead argues that because he was sentenced for the two aggravated robberies and the aggravated assault on the same date, these three offenses should be counted as a single predicate felony under § 4B1.1. But this argument is without merit because Campbell "committed the instant offense of conviction subsequent to obtaining at least two prior felony convictions [involving] a crime of violence," *see* § 4B1.1, that are counted separately under § 4A1.1(a). *Cf. United States v. Mosley*, 635 F.3d 859, 864–65 (6th Cir. 2011) (rejecting the defendant's argument that the district court improperly enhanced his Guidelines range under U.S.S.G. § 2K2.1(a) based on his two juvenile adjudications, concluding that the convictions were properly considered because they were separated by an intervening arrest and that "[o]nce the court determines that an intervening arrest separates two offenses, the analysis ends there" (brackets

and internal quotation marks omitted)). We therefore conclude that the district court did not abuse its discretion in designating and sentencing Campbell as a career offender.

### 2. Request for a variance

Campbell's next argument is that the district court abused its discretion by failing to grant his motion for a downward variance. He asserts that his mental health and his terrible upbringing as a child warranted a below-Guidelines sentence. But the record shows that the court "set forth enough to satisfy [us] that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *See Rita v. United States*, 551 U.S. 338, 356 (2007).

First, the district court considered lengthy statements made by both Campbell's attorney and the government regarding Campbell's request for a downward variance. The court also acknowledged that it was "very familiar" with Campbell's medical history, having ordered Campbell examined by mental-health experts on at least three occasions. It further noted that Campbell had a terrible upbringing.

The court concluded, however, after considering all of the above information, that the evidence was insufficient to warrant a variance in this case. "[T]he sentencing judge [here] repeatedly demonstrated that he was familiar with [Campbell's] background and personal history. . . . His explanation of the sentence imposed makes clear that he was not persuaded that these circumstances provided a reason for choosing a sentence below the Guidelines range." *See United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008). We therefore conclude that the district court did not abuse its discretion in denying Campbell's request for a downward variance.

### 3. Application of the five-year consecutive mandatory-minimum sentence under 18 U.S.C. § 924(c)

The final sentencing issue raised by Campbell is whether the five-year consecutive mandatory-minimum sentence under 18 U.S.C. § 924(c) should apply to him. He argues that the mandatory minimum in § 924(c) should not be imposed consecutively because one of his other counts of conviction carries a higher mandatory minimum. In this case, the higher mandatory minimum derives from § 924(e), the armed-career-criminal provision, which imposes a minimum term of at least 15 years of imprisonment.

Since this appeal was filed, however, the Supreme Court has resolved this issue in *Abbott v. United States*, 131 S. Ct. 18 (2010) (abrogating *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010)). The relevant portion of 18 U.S.C. § 924(c) reads as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–
>
> (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

The *Abbott* defendants argued that the "except clause" in § 924(c) applies where a conviction on another count yields a higher mandatory-minimum sentence than § 924(c). *Abbott*, 131 S. Ct. at 22. Conversely, the government argued that the "except clause" is limited to a situation where a higher mandatory-minimum sentence is imposed for the conviction under § 924(c), not where a higher mandatory-minimum sentence is imposed for a conviction on a different count. *Id* at 22–23.

The Supreme Court, agreeing with the government's interpretation, held that a "defendant is subject to a mandatory consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Id.* at 23. Applying that reasoning to this case, Campbell is subject to a mandatory-minimum consecutive sentence of five years of imprisonment under § 924(c) for possessing a firearm in furtherance of a drug-trafficking crime, regardless of the fact that he is also subject to a 15-year minimum sentence under § 924(e) for being an armed career criminal. And five consecutive years is exactly the sentence that the district court imposed on the firearms-possession count (Count 2). The district court therefore did not abuse its discretion in ordering that Campbell serve the five-year mandatory minimum under § 924(c) consecutive to his other terms of imprisonment. *See United States v. Clark*, 634 F.3d 874, 877 (6th Cir. 2011) (" While Clark's argument that the district court erred by imposing consecutive mandatory minimum sentences pursuant to section 924(c) once had traction, the Supreme Court's decision in *Abbott v. United States*, 131 S. Ct. 18, 22 (2010), forecloses any further discussion on this issue.").

Campbell advances no further arguments regarding the procedural or substantive reasonableness of his sentence. The record makes clear that the district court adequately considered the 18 U.S.C. § 3553(a) factors, sufficiently explained its reasoning for the sentence chosen, and correctly calculated the applicable Guidelines range. In addition, because Campbell's sentence is at the bottom of the applicable Guidelines range of 360 months to life imprisonment, it is "accorded a rebuttable presumption of [substantive] reasonableness." *Madden*, 515 F.3d at 609. Campbell has

not set forth any arguments to rebut that presumption.  We therefore conclude that Campbell's

sentence is both procedurally and substantively reasonable.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.